# PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "Agreement") is entered into as of January 3rd, 2024 (the "Effective Date"), between **WJH Elm St Somerville, LLC,** a Massachusetts limited liability company, and **Montalto Group, LLC**, a Delaware limited liability company (collectively, "Seller" or "Sellers") whose addresses are 19 Em St. Somerville, MA 02143 and **Montalto Group, LLC,** a Delaware limited liablity company registered to do business in Florida, whose address is 300 Andover Street Suite 254 Peabody, MA 01960 and/or its assigns ("Buyer" or "Purchaser").

In consideration of the mutual covenants and promises herein set forth, the parties hereto agree as follows:

1. SALE AND PURCHASE:

Seller agrees to sell to Purchaser, and Purchaser agrees to purchase from Seller, all of Seller's right, title and interest in and to those certain parcels of real property located at 19 Elm Street Somerville, MA 02143 parcel number M:36B:CL:42, all as more particularly described on Exhibit "A" attached hereto (collectively, the "**Land**"). Together with the following property and rights:

    (a)    The Land is hereinafter collectively referred to as (the "**Realty**");

    (b)    All plans (including engineering plans), permits, authorizations, existing development rights and agreements, entitlements and approvals pertaining solely to the Realty (collectively, the **Approvals**); and

    (c)    All easements, privileges, rights-of-way, and lands underlying any adjacent streets or roads appurtenant to the Land, and all other appurtenances pertaining to or accruing to the benefit of the Realty that are owned by Seller.

The Land, Realty, Approvals and all of the other property and rights described in this paragraph 1 shall hereinafter collectively be referred to as the "**Property**".

2. PURCHASE PRICE AND PAYMENT.

{M1820501.1}1

In consideration of the conveyance of the Property to Buyer, Buyer will pay to Seller a purchase price in the amount of One Million Nine Hundred Thousand and 00/100 Dollars (US$1,900,000.00) (the "Purchase Price"). The Purchase Price will be payable as follows:

(a) Together with delivery of a duly executed original copy of this Agreement, Buyer shall deliver to Jordan & White, LLC (the "Escrow Agent") a deposit in the sum of Twnety-Five Thousand and 00/100 Dollars ($25,000.00) (the "Deposit"), Ten Thousand and 00/100 Dollars ($10,000.00) of which shall be immediately un-refundable and fully cashable by Seller and/or their assigns (**FOOTNOTE 1**);

(b) If Buyer elects not to cancel this Agreement prior to the expiration of the Investigation Period (defined below), the remaining portion of the Deposit (Fifteen Thousand and 00/100 Dollars ($15,000.00)) shall immediately become non-refundable after expiration of Buyer's Investigation Period (as defined below), fully cashable by Seller, and at Seller's unilateral discretion and direction, Seller may direct Escrow Agent to immediately disburse such funds to Seller and/or their assigns. Prior to the expiration of Buyer's Investigative Period (defined below), the Deposit shall be held in Escrow Agent's real estate trust account, a non-interest bearing account, as earnest money deposit hereunder. The Deposit shall be credited against the Purchase Price at Closing (in the event Buyer is not in default under this Agreement and timely closes this transaction as herein contemplated); and

(c) The balance of the unpaid Purchase Price shall be paid at Closing.

3. INFORMATION REGARDING THE PROPERTY.

(i) Not later than three (3) business days after the Effective Date, to the extent same are in Seller's possession or control, Seller shall provide to Buyer various due diligence documents, records and information pertaining to the Property. Notwithstanding anything to the contrary, Buyer acknowledges that the foregoing records and information might not reflect the current condition of the Property and Buyer hereby acknowledges and agrees that Seller does not make any representation about the accuracy or sufficiency of such information.

(ii) Notwithstanding anything to the contrary, Buyer acknowledges and agrees that Seller is not responsible for updating, obtaining, or paying for any additional approvals or other fees to the City of West Palm Beach, including obtaining any necessary due to any changes in the city's Building Code.

---

1 Seller, in its unilaterally discretion, may direct Escrow Agent to immediately disburse this portion of the Deposit (the Ten Thousand and 00/100 Dollars ($10,000.00) to Seller and/or their assigns).

{M1820501.1}2

4. PROPERTY DUE DILIGENCE; BACK UP OFFERS.

    (i) Buyer will have a period commencing on the Effective Date and expiring at 5:00 p.m. on the date that is forty-five (45) calendar days after the Effective Date (the "Investigation Period" of "Inspection Period"), in which to investigate and inspect the Property to determine whether or not the same is satisfactory to Buyer in all respects. During the Investigation Period, Seller shall provide Buyer access to the Property to inspect the physical condition thereof, verify zoning, conduct engineering and environmental studies, feasibility studies, obtain any financing desired by Buyer, make soil tests, determine allowable uses under zoning or the applicable comprehensive land use plan, test for hazardous materials, and to determine the availability of water, sewer and other utilities (the foregoing are herein collectively referred to as the "Inspections"). All Inspections will be made by Buyer at Buyer's sole expense. Furthermore, throughout the term of this Agreement, (from the Effective Date through the date of Closing), Seller shall provide Buyer access to the Property to make plans and inspect the Property for future improvements and modifications, and Buyer has the right to submit site plans to the City of West Palm Beach (and Seller will grant any written permission needed for Buyer to submit applications or other documentation to the City of West Palm Beach or other municipal authority).

    (ii) Buyer hereby indemnifies and agrees to defend and hold harmless Seller from and against any loss, damages or liability arising out of Buyer's Inspections of the Property, including reasonable attorneys' fees and costs. Buyer further hereby indemnifies and agrees to defend and hold harmless Seller from and against all claims or liens against Seller or the Property filed by contractors, materialmen or laborers performing work and tests for Buyer. Buyer shall provide Seller with lien waivers for all contractors, materialmen or laborers performing work and tests on the Property. If the sale herein contemplated does not close, Buyer will restore the Property to its condition as existed prior to Buyer's entry onto the Property for Inspections, and Escrow Agent shall continue to hold the Deposit until such time as Buyer provides Escrow Agent with lien waivers as provided herein.

    (iii) As a condition to entry onto the Property by Buyer, its employees or agents or any contractor or consultant retained by Buyer, Buyer shall obtain and maintain liability insurance of at least One Million and No/100 Dollars ($1,000,000.00) covering property damage, bodily injury and death and make Seller an additional insured to said policy and deliver to Seller proof of such insurance in a form and substance reasonably acceptable to Seller.

{M1820501.1}3

 (iv) If Buyer determines, in its sole and absolute discretion, that Buyer does not wish to proceed with the acquisition of the Property, then Buyer may terminate this Agreement upon written notice delivered to Seller prior to expiration of the Investigation Period and Buyer shall immediately deliver to Seller copies of all material, information, and reports (new or updated) concerning the Property. Upon timely termination of this Agreement pursuant to this Section by Buyer, and delivery of copies of Buyer's material, information and reports (new or updated) concerning the Property to Seller, Escrow Agent shall return the remaining/refundable portion of the Deposit ($15,000.00) to the Buyer and the Buyer and Seller shall be relieved of all obligations to each other except for those that specifically survive the termination of this Agreement.

 (v) If the Seller does not receive written notice of termination as set forth herein, Buyer's right to withdraw from and terminate this Agreement pursuant to the provisions of this Agreement shall be deemed waived, and Buyer shall be deemed to have accepted the Property "AS-IS" as of the expiration of the Investigation Period subject to the Property remaining in its then current condition up through the Closing Date.

5. <u>TITLE AND SURVEY MATTERS</u>.

 (i) <u>Title Commitment</u>. Not later than twenty (20) days after the Effective Date (the "<u>Delivery Deadline</u>"), Seller will obtain, and deliver a copy to Buyer, at Buyer's expense, a title insurance commitment (the "<u>Commitment</u>") issued by a title underwriter of Seller's choosing (the "<u>Title Insurer</u>"), naming Buyer as the proposed insured and committing to insure for the amount of the Purchase Price Buyer's fee simple title to the Property, and stating all exceptions and conditions to such title, including, without limitation, all easements, restrictions, covenants, reservations, and other encumbrances affecting title (collectively, the "<u>Exceptions</u>"). The Commitment will include copies of all Exceptions. Buyer will have until the expiration of the Investigation Period (for purposes of this **Section 5**, the "<u>Review Deadline</u>"), to examine the Commitment. It is a condition of Buyer's obligation to close and pay to Seller the Purchase Price that title to the Property is marketable or insurable subject only to: (i) real property taxes, assessments and special district levies, for the year in which the Closing occurs, which shall be prorated as provided for herein, and for subsequent years, (ii) zoning and other regulatory laws and ordinances affecting the Property, (iii) matters as shown on the Plat (including any replat or other modification thereof), (iv) the restrictive covenants set forth in the Deed, if any, (vi) utility easements and other matters that do not have a material adverse impact on Buyer's use of the Property, and (vii) those other items accepted by Buyer pursuant to this **Section 5**

{M1820501.1}4

    (collectively, the "<u>Permitted Encumbrances</u>").  If Buyer determines that any matter (other than a Permitted Encumbrance) materially and adversely impacts Buyer's use of the Property, or Buyer's desire for the Property, Buyer will notify Seller in writing on or before the Review Deadline of Buyer's objections (the "<u>Objection Notice</u>").  If Buyer timely delivers the Objection Notice to Seller, Seller will have a period of thirty (30) days thereafter to attempt to cure such objections; provided, however, that Seller will have no obligation to cure any objections other than those relating to mortgages or other monetary liens affecting the Property (i.e., taxes due and payable, mortgages or other encumbrances, or construction liens, etc.).  If Seller is unable to cure such objections within such thirty (30) day period, or if Seller provides written notice to Buyer that Seller is unwilling to cure such objections, then Buyer will have a period of ten (10) days thereafter in which to elect, by written notice to Seller, whether to (i) waive the unsatisfied objections and complete the purchase of the Property subject to the objectionable matters, without reduction of the Purchase Price, or (ii) terminate this Agreement.  If Buyer fails to make an election within such time period, Buyer will be deemed to have elected to waive such objections, all of which thereupon shall be deemed Permitted Encumbrances.  Notwithstanding anything to the contrary, if Buyer timely elects to terminate this Agreement due to Seller's unwillingness to cure an objection, upon termination of this Agreement pursuant to this Section, Escrow Agent shall return the refundable <span style="color:red">and non-refundable portions</span> of the Deposit to the Buyer and the Buyer and Seller shall be relieved of all obligations to each other except for those that specifically survive the termination of this Agreement.

(ii) <u>Survey</u>.  Together with the Commitment, Buyer may obtain, at Buyer's expense, a current ALTA survey of the Property (the "<u>Updated Survey</u>") prepared in accordance with the minimum technical standards for surveys under Florida law, certified to Buyer and the Title Insurer, showing the legal description for the Property and specifying the ground surface area thereof. On or before the Effective Date, Seller shall deliver to Buyer a copy of its prior survey(s) (to the extent Seller has one) of the Property. Buyer will have until the expiration of the Investigation Period to review the Updated Survey and to deliver in the Objection Notice its objections to any matters that materially and adversely impact Buyer's use of the Property (other than Permitted Encumbrances) disclosed by such Updated Survey.  If Buyer has any objections to matters shown on, or omitted from, the Updated Survey, then such objections, if any, shall be made in the same manner and subject to the same conditions, review periods and remedies, as objections to the Commitment as provided above.

{M1820501.1}5

6. <u>REPRESENTATIONS AND WARRANTIES</u>.

    (a)    Sellers represent and warrant to Buyer as follows:

        (i)    Sellers are limited liability companies organized under the laws of the State of Florida and their status is active. Sellers possess all requisite power and authority to enter into and perform this Agreement and to carry out the transaction(s) contemplated herein.

        (ii)    Neither of the Sellers is a "foreign person" within the meaning of the United States tax laws and to which reference is made in Internal Revenue Code Section 1445.

        (iii)    To the best of Seller's knowledge, no party has any option to purchase, right of first refusal or other contractual right to acquire the Property or any part thereof, or any interest therein, and, no party other than Sellers has/have any rights of possession to the Property.

        (iv)    Sellers' entry into and performance of this Agreement do not conflict with or violate any contracts, agreements or undertakings between Sellers and any third parties.

        (v)    To the best of Seller's knowledge, no action, suit, arbitration, unsatisfied order or judgment, governmental investigation or other proceeding is pending or has been threatened that concerns or involves the Property or Sellers' interests in the Property including any condemnation action.

        (vi)    No bankruptcy, insolvency, rearrangement or similar action involving the Property or Sellers' interests in the Property, whether voluntary or involuntary, is pending or, to Sellers' knowledge, threatened, and Sellers have no intention of filing any such action or proceeding.

        (vii)    No defaults exist under any service agreement disclosed in this Agreement (if any) relating to the Property.

        (viii)    All contracts and agreements relating to the operation and management of the Property may be immediately terminated by Seller prior to Closing, or terminated at will within thirty (30) days by Buyer after the Closing Date without penalty.

        (ix)    To the best of Seller's knowledge, there are no pending or threatened or written notice from any governmental authority, mortgagee, insurance company, board of fire underwriters or any other person or entity, alleging that Seller presently is in breach or violation of applicable law, statute, code, act, ordinance, rule, permit, license, regulation, standard or

    underwriting requirement, or under any contract, agreement or lease or under any order of court or federal, state, municipal or other governmental department, commission, board, bureau, agency or instrumentality, wherever located, with respect to the Property or Seller's present use and operation of the Property.

(b) Buyer represents and warrants to Sellers as follows:

  (i) Buyer is a Delaware limited liability company organized under the laws of the State of Delaware, is legally authorized to do business in the State of Florida, and its status is active. Buyer possesses all requisite power and authority to enter into and perform this Agreement and to carry out the transaction contemplated herein.

  (ii) Buyer's entry into and performance of this Agreement does not conflict with or violate any contracts, agreements or undertakings between Buyer and any third parties.

  (iii) No bankruptcy, insolvency, rearrangement or similar action involving Buyer, whether voluntary or involuntary, is pending or threatened, and Buyer has no intention of filing any such action or proceeding.

(c) Disclaimers and Disclosures of Seller.

  (i) **AS - IS Condition**. Except as expressly provided otherwise in this Agreement, Purchaser acknowledges that it will be purchasing the Property based solely upon its inspection and investigation of the Property and that Purchaser will be purchasing the Property "**as is**" and "**with all faults**" based upon the condition of the Property and the status of government approvals as of the date of this Agreement, subject to loss by fire, casualty or condemnation from the Effective Date of this Agreement until the Closing Date.

(d) Except as expressly provided otherwise in this Agreement, Purchaser acknowledges that neither Seller nor its consultants or agents have made any representations or warranties of any kind upon which Purchaser is relying as to any matters concerning the Property, including, but not limited to:

(i) the Property;
(ii) the existence or nonexistence of any hazardous materials;
(iii) economic projections or market studies concerning the Property; including but not limited to any budgets for developing the Property or costs to be paid while owning the Property;
(iv) any development rights, taxes, bonds, covenants, conditions and restrictions affecting the Property;
(v) water or water rights from any utility;
(vi) topography, drainage, soil, subsoil of the Property;

{M1820501.1}7

- (vii) the utilities serving the Property or the proposed utilities for the Property;
- (viii) comprehensive plans or master plans, specific plans, area plans, special assessment districts, zoning, environmental, building or other laws, rules or regulations affecting the Property;
- (ix) the development, entitlements, benefits or other rights in connection with the development of the Property;
- (x) the obligations, restrictions, limitations, feasibility or other requirements in connection with the development of the Property;
- (xi) the current or future real estate tax liability, assessment or valuation of the Property;
- (xii) the potential qualification of the Property for any benefits conferred by any laws whether for subsidies, special real estate tax treatment, insurance, mortgages or any other benefits, whether similar or dissimilar to those enumerated;
- (xiii) the ability to obtain a change in the zoning or a variance in respect to the non-compliance of the Property, if any, with zoning laws;
- (xiv) the nature and extent of any right-of-way, easement, lease, possession, lien, encumbrance, license, reservation, condition, declaration, covenant or otherwise;
- (xv) the availability of any financing for the purchase of the Property from any source, including, without limitation, any government authority or any lender;
- (xvi) the Exceptions; and
- (xvii) the current or future use of the Property or adjoining properties.

> EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, SELLER MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING BUT NOT LIMITED TO, ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE PROPERTY. SELLER SPECIFICALLY DISCLAIMS ANY AND ALL WARRANTEES REGARDING ANY PRIOR CONSTRUCTION, WHETHER OF INFRASTRUCTURE (E.G., UTILITIES, STREETS, ETC.), OR OTHERWISE.

7. CLOSING AND CLOSING DATE; OPTION TO EXTEND CLOSING.

The consummation of the transactions contemplated herein by Buyer and Seller (the "Closing") will be held fifteen (15) days following the expiration of the Inspection Period (the "Closing Date").

Notwithstanding anything to the contrary, prior to the Closing, Buyer shall have the unilateral option to extend the Closing and Closing Date for two (2) thirty (30) day period ("Extended Closing Dates") upon delivery of written notice to Seller no less that ten (5) days' prior to the expiration of the then scheduled Closing Date. Upon such elections, Buyer shall

deliver to Escrow Agent a non-refundable extension fee (each an "Extension Fee") in the amount of One Hundred Thousand and 00/100 Dollars ($100,000.00) for each such extension, which Extension Fee(s) shall <u>not</u> be credited against the Purchase Price at Closing and, at Seller's unilateral discretion and direction, Seller may immediately thereafter direct that Escrow Agent immediately disburse such funds to Seller and/or its assigns upon receipt of such Extension Fee(s).

8. <u>COVENANTS AND CONDITIONS OF CLOSING</u>.

    (a) <u>Seller's Deliveries</u>. On the Closing Date, Seller will execute and deliver to Buyer the following:

        (i) <u>Deed</u>. A special warranty deed (the "<u>Deed</u>") in recordable form conveying the Property to Buyer subject to the Permitted Encumbrances;

        (ii) <u>Seller's Affidavit</u>. An affidavit of Seller in form reasonably satisfactory to Buyer and Title Insurer, evidencing that there have been no improvements or repairs made to the applicable portion of the Property within ninety (90) days preceding the Closing Date, except as otherwise disclosed to Buyer and Title Insurer in writing, and sufficient in form and content to cause Title Insurer to eliminate any exception for mechanics liens from the title policy. Such affidavit shall also evidence that Seller is in sole possession of the applicable portion of the Property, and shall contain a certification that Seller is not a foreign person for purposes of Section 1445, Internal Revenue Code and such other certifications as may be sufficient for Title Insurer to insure the "gap" at Closing;

        (iii) <u>Resolutions</u>. Certified resolutions and such other instruments as may be required by the Title Insurer, evidencing the authority of Seller to enter into and perform this Agreement and to perform Seller's obligations hereunder;

        (iv) <u>Settlement Statement</u>. A counterpart, executed by Seller, of a summary statement describing in detail the consideration, prorations, adjustments, costs and expenses associated with this transaction ("<u>Settlement Statement</u>"), a draft of which shall be sent to Buyer at least two (5) business days before the Closing Date;

        (v) <u>Other Documents</u>. Such other documents and instruments as are contemplated hereunder or as may be reasonably required by Buyer, its counsel or the Title Insurer and necessary to consummate this transaction and to otherwise effectuate the agreements of the parties hereto; and

      (vi)    <u>Assignment of Items and Other Documents</u>. An assignment of any and all approvals, licenses, permits, developer's rights, easements, rights-of- way, and other property rights pertaining to the Realty.

  (b)    <u>Buyer's Deliveries</u>.  On the Closing Date, Buyer will execute and/or deliver to Seller, as applicable, the following:

      (i)    <u>Cash Due at Closing</u>. At Closing, subject to applicable adjustments (including credits for the Deposit, costs and prorations, Buyer shall pay Seller the remaining amount of the Purchase Price;

      (ii)    <u>Settlement Statement</u>. A counterpart, executed by Buyer, of the Settlement Statement;

      (iii)    <u>Resolutions</u>. Certified resolutions and such other instruments as may be required by Title Insurer, evidencing the authority of Buyer to enter into and perform this Agreement and to perform Buyer's obligations hereunder; and

      (iv)    <u>Other Documents</u>. Such other documents and instruments as are contemplated hereunder or as may be reasonably required by Seller, its counsel or the Title Insurer and necessary to consummate this transaction and to otherwise effectuate the agreements of the parties hereto and such other payments as are contemplated hereunder.

9.    <u>PRORATIONS.</u>

  (a)    <u>General</u>. Except as otherwise expressly provided in this Agreement, all income and expenses of the Property (including, without limiting the generality of the foregoing, amounts paid and payable for utilities, taxes and assessments) with respect to the period prior to the Closing Date, shall be for the account of Seller, and all income and expenses of the Property with respect to the period commencing with the Closing Date shall be for the account of Buyer. All rental payments received by Seller after the Closing Date shall be immediately remitted to Buyer (if any).

  (b)    <u>Taxes</u>. Real and personal property taxes (if any), assessments and special district levies shall be prorated for the tax fiscal year in which the Closing Date occurs on the basis of the then most current assessed value and tax rate available with respect to the Property and said fiscal year, Seller being charged with said proration through the date prior to the Closing Date and Buyer with the Closing Date and thereafter. Such proration shall be recalculated upon the issuance of final bills for such taxes and any amount due from one party by reason of such recalculation to the other shall be paid in cash at that time. Seller shall pay and discharge on or before the Closing Date any assessment of any public taxing authority which affects or is a lien upon the Property or any part thereof. Seller shall pay and discharge on or before the Closing Date all

mortgages and liquidated liens and judgments. Notwithstanding the foregoing, if the only tax bill available for the Property includes real property which is not a part of the Property, then taxes will be prorated based on the number of gross square feet of the Property's area compared with the total gross square feet of all land included in the tax bill and the amount prorated for the remainder of the applicable tax year shall be paid by Buyer to Seller at Closing. After the Closing, if a separate tax bill is ultimately issued for the tax year in which the Closing occurs, then, upon request from Buyer, Seller shall remit to Buyer Seller's prorata portion of the taxes due for the period through the date prior to the Closing Date, plus the amount paid by Buyer to Seller at Closing as provided for in the immediately preceding sentence.

Notwithstanding anything to the contrary, the provisions of this Section 9 shall survive the Closing.

10. **CLOSING COSTS**.

    (a) Seller will pay for all state, county and local transfer taxes, documentary stamps and surtax on the Deed, the commission payable to Brokers as provided herein, recording fees relating to corrective instruments, and Seller's attorneys' and other professionals' fees and costs, the costs to cure any title matters which Seller has agreed to cure under this Agreement, and the costs to close open permits, and resolve, pay and obtain releases of any violations on the Property as of the Closing Date. Seller shall also be responsible pay the cost of the Commitment and title search fee and the premium for the owner's title insurance policy in the amount of the Purchase Price

    (b) Buyer will pay the cost of any endorsements to the owner's title insurance policy, the cost of the Updated Survey, the cost of Buyer's due diligence investigations and Buyer's attorneys' and other professionals' fees and costs. Buyer shall also pay the cost for recording the deed and any mortgage it obtains with regard to the acquisition of the Property (if any).

11. **BROKERAGE**.

Buyer and Seller warrant to each other that neither has engaged or employed any broker or agent with respect to the purchase of the Property. Buyer and Seller each indemnify and agree to hold harmless the other from any claim made by any other brokers or agents who claim to act for the party sought to be charged for a commission, compensation, brokerage fees, or similar payment in connection with this transaction and against any and all expense or liability arising out of any such claim other than as provided above. The foregoing warranties and indemnifications will survive delivery of the Deed or termination of this Agreement, as applicable.

12. <u>REMEDIES</u>.

    <u>Seller's Pre-Closing Default</u>.  In the event that Seller defaults in the performance of its obligations under this Agreement and such default is not cured within five (5) days of receipt of written notice thereof, such failure shall be an event of default by the Seller, and Buyer may elect, as its sole remedy to either (i) commence an action for specific performance within sixty (60) days of the date of the default; or (ii) terminate this Agreement by written notice to Seller and Escrow Agent and have the refundable and non-refundable portions of the Deposit immediately refunded.

(a)    <u>Buyer's Default</u>.  If Buyer fails comply with or perform any of the non-monetary covenants, agreements, or obligations to be performed by Buyer under the terms and provisions of this Agreement, and fails to cure, or begin to cure, such default within five (5) days of receipt of written notice thereof, such failure shall be an event of default by the Buyer, and Seller's sole remedy shall be to terminate this Agreement and retain as reasonable liquidated damages the total sum of all deposits then paid to Escrow Agent. If Buyer fails to comply with or perform any of the monetary covenants, agreements, or obligations to be performed by Buyer under the terms and provisions of this Agreement, and fails to cure such default within three (5) business days of receipt of written notice thereof, such default shall be deemed an immediate default, and Seller's sole remedy shall be to terminate this Agreement and retain as reasonable liquidated damages the total sum of the Deposit then paid to Escrow Agent. Notwithstanding the foregoing, the indemnifications provided by Buyer under this Agreement will survive separately from the termination of this Agreement.

13. <u>NOTICES</u>.

All notices, demands, requests and other communications hereunder will be in writing and will be deemed to have been given (i) on the same business day if delivered personally, (ii) three (3) business days following mailing by registered or certified mail, return receipt requested, postage pre-paid, or (iii) on the following business day if delivered by Federal Express or other similar reputable national overnight delivery service, to either party at its address set forth below.

    If to Seller:     WJH Elm St. Somerville, LLC
                                   19 Elm Street
                                   Somerville, MA 02143
                                   Attention:  Jason Kahan
                                   Email:  jk@jasonkahan.com

    With copy to:

        If to Buyer:        Montalto Group, LLC
                              300 Andover Street Ste 254
                              Peabody, MA 01960
                              Attention: Joseph Montalto
                              Email: jmontalto@montaltogroup.com

        With Copy to:

or at such other address as the party may specify from time to time by written notice to the other party.  The Parties agree that notice to their attorneys constitutes notice to the party.

14.    <u>RELATIONSHIP OF THE PARTIES</u>.

Nothing contained in this Agreement or the activities contemplated hereby shall be construed to create the relationship of principal and agent, partnership, joint venture, trust, buyers in common, or any other relationship between the parties hereto other than separate and distinct entities dealing at arm's length as Seller and Buyer respectively for their own separate interests and benefits.  Without limiting the foregoing, but in supplementation thereof, Buyer acknowledges and agrees that neither Seller nor any "Affiliate of Seller" is a co-venturer or partner of Buyer in Buyer's ownership, development or operation of, construction upon, sales, leasing or other activity conducted on or related to, or resale of the Property, and that neither Seller nor any Affiliate of Seller bears or shall bear any liability whatsoever resulting from or arising out of Buyer's ownership, development or operation of, construction upon, sales, leasing or other activity conducted on or related to, or resale of the Property.

15.    <u>SUCCESSORS AND ASSIGNS; ASSIGNMENT OF AGREEMENT</u>.

Notwithstanding anything to the contrary, at any time prior to Closing, Buyer shall be entitled to assign its rights and obligations under this Agreement which assignment shall not require Seller's approval.  Upon any such assignment, and notice thereof to Seller, Buyer shall remain liable hereunder and not be released from liability under this Agreement.

16.    <u>GOVERNING LAW; VENUE</u>.

This Agreement will be governed and construed in accordance with the laws of the State of Massachusetts.  Any dispute arising out of or under this Agreement will be litigated in the appropriate court of the State of Massachusetts in Middlesex County.

17.    <u>CAPTIONS</u>.

The captions of this Agreement are inserted for convenience or reference only and not to define, describe or limit the scope or the intent of this Agreement or any term hereof.

18. COUNTERPARTS.

This Agreement may be executed in any number of original or electronic counterparts, each of which will be deemed to be an original but all of which together will constitute one and the same instrument.

19. CHANGES AND MODIFICATIONS: CHANGES AND INCORPORATIONS OF PRIOR AGREEMENT.

This Agreement may not be orally changed, modified or terminated; it supersedes any and all prior, written or oral, understandings or agreements, including, without limitation, the Letter of Intent by and between Seller and Buyer, sales brochures, marketing materials and correspondence; other matters of similar nature will be deemed to be of no force or effect in the interpretation of this Agreement, it being intended that this Agreement represents the entire understanding of the parties.  No waiver of any provision hereof will be valid unless in writing and signed by a party against whom it is to be enforced.

20. WAIVER.

No failure of either party to exercise any power given hereunder or to insist upon strict compliance with any obligations specified herein, and no custom or practice at variance with the terms hereof, will constitute a waiver of any party's right to demand exact compliance with the terms hereof, provided, however, that any party may, at its sole option, waive any requirement, covenant or condition herein established for the benefit of such party without affecting any of the other provisions of this Agreement.

21. RISK OF LOSS: CONDEMNATION.

Seller will have the risk of loss to the Property before the Closing, whether due to governmental condemnation or casualty loss.  If such event occurs or is threatened, Seller will notify Buyer promptly, and Buyer may within ten (10) days after such notice elect either to terminate this Agreement or to acquire the Property on the Closing Date and any proceeds of insurance or condemnation action will belong to Buyer, without a reduction in the Purchase Price.  In the event Buyer elects to terminate this Agreement, the refundable and non-refundable portions of the Deposit shall be immediately returned to Buyer.  Notwithstanding anything to the contrary, in the event Buyer elects to proceed with closing and submits a claim(s), Seller shall reasonably cooperate with Buyer in prosecuting any claim for reimbursement from the condemning authority, provided such action shall be at Buyer's expense.

22. FURTHER ASSURANCES.

Seller and Buyer each agree to execute and deliver to the other such further documents and instruments as may be reasonable and necessary in furtherance of and to effectuate the intent of the parties as expressed by the terms and conditions hereof.

23. <u>ATTORNEYS' FEES AND COSTS</u>.

In the event that either party hereto employs the services of attorneys to enforce its rights under this Agreement or to enforce the obligations of the other party under this Agreement, the non-prevailing or defaulting party will pay to the prevailing party such prevailing party's reasonable attorneys' fees, costs and expenses incurred in connection with the prosecution or defense, as the case may be, of such enforcement. The provisions of this Section shall survive termination of this Agreement, Closing and delivery of the Deed.

24. <u>TIME OF ESSENCE</u>.

Time shall be of the essence with respect to the Parties' obligations under this Agreement.

25. <u>COMPUTATION OF DAYS</u>.

If any date herein set forth for the performance of any obligations by Seller or Buyer or for the delivery of any instrument or notice as herein provided should be on a Saturday, Sunday or legal holiday, the compliance with such obligations or delivery shall be deemed acceptable on the next business day following such Saturday, Sunday or legal holiday. As used herein, the term "legal holiday" means any state or federal holiday for which financial institutions or post offices are generally closed in the State for observance thereof. All references to "day" or "days" shall mean calendar days unless otherwise specified herein.

26. <u>ADVICE OF COUNSEL</u>.

EACH PARTY ACKNOWLEDGES THAT IT HAS BEEN ADVISED BY ITS OWN COUNSEL WITH RESPECT TO THE TRANSACTION GOVERNED BY THIS AGREEMENT, AND SPECIFICALLY WITH RESPECT TO THE WAIVER OF EACH PARTY'S RIGHT TO TRIAL BY JURY.

27. **<u>JURY WAIVER</u>**.

**IN ANY CIVIL ACTION, COUNTERCLAIM, OR PROCEEDING, WHETHER AT LAW OR IN EQUITY, WHICH ARISES OUT OF, CONCERNS, OR RELATES TO THIS AGREEMENT, ANY AND ALL TRANSACTIONS CONTEMPLATED HEREUNDER, THE PERFORMANCE HEREOF, OR THE RELATIONSHIP CREATED HEREBY, WHETHER SOUNDING IN CONTRACT, TORT, STRICT LIABILITY, OR OTHERWISE, TRIAL SHALL BE TO A COURT OF COMPETENT JURISDICTION AND NOT TO A JURY. EACH PARTY HEREBY IRREVOCABLY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS AGREEMENT WITH ANY COURT, AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO OF THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY. NEITHER PARTY HAS MADE**

OR RELIED UPON ANY ORAL REPRESENTATIONS TO OR BY ANY OTHER PARTY REGARDING THE ENFORCEABILITY OF THIS PROVISION.  EACH PARTY HAS READ AND UNDERSTANDS THE EFFECT OF THIS JURY WAIVER PROVISION.

28. ESCROW AGENT.

The Escrow Agent shall not be liable for any actions taken in good faith, but only for its gross negligence or willful misconduct.  The parties hereby indemnify and hold the Escrow Agent harmless from and against any loss, liability, claim or damage whatsoever (including reasonable attorney's fees and court costs at trial and all appellate levels) the Escrow Agent may incur or be exposed to in its capacity as escrow agent hereunder except for gross negligence or willful misconduct.  If there be any dispute as to disposition of any proceeds or documents held by the Escrow Agent pursuant to the terms of this Agreement, the Escrow Agent is hereby authorized to interplead said amount or the entire proceeds or the documents with any court of competent jurisdiction and thereby be released from all obligations hereunder.

29. TAX DEFERRED EXCHANGE.

If requested by Seller, Buyer shall cooperate with Seller in effectuating a Tax Deferred Exchange pursuant to section 1031 of the Internal Revenue Code of 1986, as amended (the "Exchange").  However, Seller shall be solely responsible for any and all costs and fees incurred in connection with such exchange; provided, however, in no event shall such exchange delay nor prevent the Closing hereunder.

30. CONFIDENTIALITY.

Except as otherwise approved in writing by both Seller and Buyer, each party agrees to keep confidential all terms and conditions of this Agreement as well as all financial and/or other client related information concerning the parties except for disclosure to those representatives, officers, partners, investors, potential investors, employees and agents who have a need to know such information.  The foregoing confidentiality shall exist until the Closing.

31. PAYMENT OF PURCHASE PRICE, DEPOSIT AND EXTENSION FEE(S).

Buyer hereby acknowledges and agrees that upon the election of the Sellers, the Sellers may (prior to Closing) assign their rights to receive the Purchase Price, Deposit and Extension Fee(s) (if any) hereunder to Antonio Orlando individually as Manager and owner of Sellers.

**[SIGNATURES APPEAR ON FOLLOWING PAGE]**

**IN WITNESS WHEREOF**, Buyer and Seller have executed this Agreement as of the Effective Date.

**SELLER:**

**WJH 19 Elm St. Somerville, LLC, a Massachusetts limited liability company**

By:_____*JK*_____
Jason Kahan, Manager

Date: __02/27/2024_____

**BUYER**:

**Montalto Group, LLC,** a Delaware limited liability company

By:___*JOSEPH MONTALTO*_____
Joseph Montalto, Member

Date: __02/27/2024_____

## **EXHIBIT A**

LEGAL DESCRIPTIONS